

FILED

MAY 11 2020

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

---

**MIGUEL AMEZCUA PEREGRINA,**
individually and
on behalf of all others
similarly situated,

1:20 CV 1032

Civil Action No.:

*Plaintiff,*

Complaint – Class Action

v.

**SEAM GROUP, LLC,**

JUDGE OLIVER
MAG. JUDGE PARKER

*Defendant.*

---

### PLAINTIFF'S COLLECTIVE AND CLASS ACTION COMPLAINT
### AND DEMAND FOR TRIAL BY JURY

---

Miguel Amezcua Peregrina ("Plaintiff" or "Amezcua Peregrina"), by and through his attorneys and on behalf of himself and all others similarly situated, hereby submits this Collective and Class Action Complaint against SEAM Group, LLC ("Defendant" or "SEAM Group"), and alleges as follows:

### INTRODUCTION

1.      This case is about SEAM Group's policy of coordinating with labor brokers to recruit highly educated guest workers from other countries, using visa fraud, "bait and switch" tactics, and other pressures to coerce these workers into filling entry-level positions in the United States. Defendant then forces its guest workers to endure long hours in unsafe conditions, compensating them with sub-minimum wages and no overtime pay.

2.      Defendant's guest worker policy undermines federal labor laws, takes advantage of American visa programs, and impacts the wellbeing of its employees.

1

3.    Plaintiff Amezcua Peregrina brings this action against Defendant on behalf of himself and on behalf of a putative collective and class for failing to pay guest workers legally compliant minimum wages and overtime compensation in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*; for discriminating against guest workers on the basis of their race and/or national origin in violation of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e, *et seq.*; for denying guest workers equal rights on the basis of their race, ethnicity, and/or ancestry in violation of the Civil Rights Act of 1866 (Section 1981), 42 U.S.C. § 1981, *et seq.*; and for trafficking guest workers, in violation of the Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1589 *et seq.*

4.    Additionally, Defendant failed to accommodate Amezcua Peregrina and terminated him on the basis of disability. Plaintiff therefore brings a claim against Defendant on behalf of himself under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, as amended.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because the claims alleged herein arise under federal law.

6.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendants are domiciled within this District and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District.

7.    Plaintiff filed a charge of discrimination and an amended charge of discrimination with the EEOC, asserting class and individual claims against Defendant under Title VII and the ADA. Having exhausted his administrative remedies, Plaintiff timely brings this action against Defendant.

2

## THE PARTIES

8.     Plaintiff Miguel Amezcua Peregrina is an adult resident of Guadalajara, Mexico. Amezcua Peregrina was employed by Defendant as a guest worker in the position of Field Engineer throughout the United States from approximately March 15, 2018 to approximately March 14, 2019 as defined by 29 U.S.C. § 203(g), and 42 U.S.C. §§ 2000e(f), 12111(4).

9.     Defendant SEAM Group, LLC, is a limited liability company formed in the State of Delaware. SEAM Group was created on or about September 11, 2018, through a stock merger of Predictive Service, LLC ("Predictive Service"), and Lewellyn Technology, LLC ("Lewellyn Tech"). SEAM Group employs over 200 individuals, and its annual gross volume of business exceeds $500,000. While SEAM Group is headquartered in Beachwood, Ohio, it has clients located all over the United States. Defendant—and before it, Predictive Service—was Plaintiff's employer within the meaning of the FLSA, 29 U.S.C. § 203(d), Title VII, 42 U.S.C. § 2000e(b), and the ADA, 42 U.S.C. § 12111(5)(a).

## FACTUAL ALLEGATIONS

10.     Plaintiff Amezcua Peregrina and similarly situated guest workers reallege and incorporate by reference all allegations in all preceding paragraphs.

**Defendant's Business**

11.     As stated above, Defendant was created in 2018 through a stock merger of Predictive Service and Lewellyn Tech.

12.     Prior to Defendant's creation, Predictive Service provided clients with data collection and analysis to address their equipment maintenance and repair needs. Lewellyn Tech

3

conducted electrical safety training and inspection services such as Arc Flash, Combustible Dust and Lockout/Tagout risk assessments.

13.     Today, Defendant SEAM Group employs many of the same personnel and continues to operate in the realm of safety and strategic enterprise asset management. This means Defendant provides commercial clients with electrical safety, predictive maintenance programs, reliability consulting, and repair services.

14.     As part of its business, Defendant provides clients with infrared inspections. Defendant's workers, including Amezcua Peregrina, are responsible for: driving to corporate clients' facilities; opening electrical panels; taking current measurements; recording inspection information; and uploading photos and inspection information to a computer.

15.     This work is performed by Defendant's Field Engineers, Thermographers, and Field Technicians. Field Assistants also assist Field Technicians.

16.     Defendant advertises job openings for its entry-level infrared inspection positions, including its Thermographer and Field Technician positions, through the "Careers" page on its website. Defendant's online postings state that candidates for these positions are only required to possess a high school diploma or GED equivalent.

17.     In practice, however, Defendant has a policy of misusing American visa programs to hire overqualified guest workers with advanced degrees for many of these positions.

18.     Defendant recruits highly qualified individuals from low-income countries, most notably Mexico, by partnering with labor brokers, such as EULEN Flexiplan, S.A. de C.V. ("Grupo EULEN").

19.     According to its website, Grupo EULEN considers itself a "pioneer[] in the concept of outsourcing." Part of Grupo EULEN's business involves staff recruitment, including attraction and recruitment of professionals and total or partial outsourcing of companies' Human Resources departments. Grupo EULEN facilitates the placement of approximately 85,000 employees worldwide, with 2,770 employees in the United States.

20.     Labor brokers like Grupo EULEN coordinate interviews and hiring between Defendant and potential guest workers. Once Defendant interviews a guest worker it wants to hire, it invites the guest worker to undergo training at its headquarters and begin working for its clients.

21.     Defendant's guest worker coordinator oversees the recruitment and hiring process and maintains regular communication with its labor broker partners and potential guest workers.

22.     Defendant offers its recruited guest workers positions that appear, on paper, to reflect their relevant training and expertise, with titles such as "Predictive Maintenance (PdM) Field Engineer." Defendant promises the guest workers that they will be using their advanced degrees and expertise to assist Defendant's clients in identifying problems with their manufacturing and building systems.

23.     Defendant also promises the guest workers fair pay and decent working conditions.

24.     Defendant provides the guest workers with a template visa support letter, on Defendant's letterhead, confirming as much so that they can enter the United States under a visa program, like the TN visa program.

25.     The TN visa program exists to permit qualified Canadian and Mexican citizens to seek temporary entry in the United States as guest workers to engage in business activities at a

professional level. Engineers qualify as professionals who are eligible to seek admission to the United States as TN guest workers.

26.     Defendant tells the guest workers that they will receive a visa if they fill out the appropriate forms online and present Defendant's template letter to the United States consulate. Defendant provides the guest workers with information about the visa process and sends them a link to the online forms via email.

27.     But once the guest workers arrive to their job sites Defendant actually places them in entry-level infrared inspection positions, doing the work of a Field Technician or Thermographer, which only requires a high school degree or GED. These entry-level positions do not align with the professional engineering positions the guest workers were promised, nor the positions Defendant described in its template visa support letters.

28.     Defendant does not allow its guest workers to make professional engineering decisions or use their relevant experience to better serve corporate clients. Instead, the guest workers complete the same entry-level labor as, and sometimes work side-by-side with, Defendant's white and/or American Field Technicians and Thermographers whom Defendant pays significantly more money based on their race, national origin, ethnicity, and/or ancestry.

29.     The guest workers' skill, effort, and responsibility on the job matches or exceeds the skill, effort, and responsibility of Defendant's white and/or American Field Technicians and Thermographers.

30.     As stated above, the guest workers are at least as qualified if not more qualified with more education, training, and experience than their white and/or American counterparts.

31.     In Defendant's Position Statement filed with the EEOC, Defendant admits to maintaining a uniform policy of paying employees "based on the prevailing wage in the region from which they are recruited and work." Defendant refers to its policy as "geographic pay differentials" or "location pay differentials."

32.     These "location pay differentials" do not reflect adjustments based on where the work is performed—as it is performed across the United States—but rather the differentials reflect the home countries of the workers.

33.     For example, Defendant regularly pays its guest workers from Mexico a gross monthly salary of $19,000 Mexican Pesos regardless of the number of hours they work. This means Defendant's Mexican guest workers make approximately $987.01 per month in U.S. dollars, which amounts to less than $7.25 per hour.

34.     In contrast, Defendant hires white and/or American employees to do the same or similar work at an hourly rate of approximately $80 per hour.

35.     Defendant is aware that its guest workers receive less than minimum wage because Defendant sets the guest workers' monthly salary and schedule and because Defendant pays its white and/or American Field Technicians and Thermographers substantially more than minimum wage.

36.     When one guest worker tried to bring up salary with Defendant, Defendant refused to listen and ignored the situation.

37.     To make matters worse, the daily work Defendant assigns and expects guest workers to complete routinely takes more than eight hours, often exceeding 50 to 60 hours per week, despite representations that the work will not exceed 48 hours per week.

38.     Defendant is aware that its guest workers routinely work over 40 hours per week and are not paid an overtime premium, because Defendant schedules and requires guest workers to complete assignments that require long days.

39.     Defendant is also aware of the hours guest workers work because guest workers log their hours on timesheets that Defendant's clients sign and submit to Defendant. Yet, Defendant does not provide these guest workers with 1.5 times their regular rate of pay for hours worked over 40 in the workweek.

40.     Additionally, Defendant requires guest workers to work weekend and night hours that other white and/or American employees are not required to complete.

41.     Defendant routinely requires guest workers to stay at hotels up to two hours away from their inspection sites.

42.     Defendant further isolates its guest workers and requires them to complete work under unsafe conditions, threatening them with financial and other pressures to induce them to remain employed with Defendant.

43.     For example, at the beginning of a Mexican guest worker's employment with Defendant, Defendant gives the guest worker $15,000 Mexican Pesos, or approximately $779.22 U.S. dollars. Guest workers are expected to use this money to pay for work-related travel expenses. As guest workers spend the money, they submit travel receipts for reimbursement from Defendant. However, Defendant requires repayment of the full $15,000 Mexican Pesos at the time of a guest worker's termination, regardless of whether Defendant has actually reimbursed the guest worker's travel receipts or not.

44.     Defendant thus uses the $15,000 Mexican Pesos as a penalty to effectively force guest workers into working in unsafe conditions in perpetuity. Defendant does this by refusing to reimburse guest workers' travel receipts until their unsafe job assignments are finished. In this way, guest workers at dangerous jobsites feel unable to leave unless they can pay Defendant the full $15,000 Mexican Pesos, an amount that the guest workers no longer possess due to Defendant's delayed reimbursement scheme.

45.     Defendant does not inform guest workers of this policy until they arrive in the United States for their initial training period with the company.

46.     Further, guest workers' TN visas expire upon termination of their employment. If a guest worker refuses to work at a dangerous jobsite and suffers termination as a result, then the guest worker is no longer authorized to work as a guest worker in the United States and must leave the country. Defendant uses the visa status of its guest workers to its advantage by requiring guest workers to engage in unsafe work or face immigration consequences.

47.     By manipulating guest workers' pay, visa status, and working conditions, Defendant obtains highly qualified employees to fill entry-level positions in dangerous environments at a fraction of the cost of hiring white and/or American workers.

**Amezcua Peregrina and Defendant's Discrimination**

48.     Plaintiff Amezcua Peregrina is a Mechatronic Engineer who received his master's degree in Electronic Systems from Technológico de Monterrey in 2017. The Mexican Secretariat of Public Education awarded Amezcua Peregrina his professional engineering license in 2016 and his master's license in 2017.

49.     Prior to working for Defendant, Amezcua Peregrina worked for several reputable Mexican engineering firms and companies, where he focused on process optimization, product development, and research.

50.     In February 2018, Amezcua Peregrina responded to Grupo EULEN's job posting about an open Field Engineer position. Grupo EULEN had published the posting on behalf of Defendant (then called Predictive Service).

51.     After interviewing with Grupo EULEN for a job with Predictive Service, Amezcua Peregrina completed two interviews with Defendant directly, one online and one in-person. Both interviews were conducted by Adriana Sanchez and Michael Radak.

52.     At the time of the interview, Ms. Sanchez served as Defendant's guest worker coordinator. Mr. Radak served as Manager of Quality, Training, and Safety for Predictive Service, LLC, but he now serves as Director of PdM Operations for Defendant SEAM Group.

53.     On or about March 15, 2018, Defendant hired Amezcua Peregrina.

54.     Amezcua Peregrina's contract with Defendant provided for a gross monthly salary of $19,000 Mexican Pesos, or approximately $987.01 U.S. dollars, irrespective of the hours he worked.

55.     Defendant gave Amezcua Peregrina $15,000 Mexican Pesos, or approximately $779.22 U.S. dollars, to spend on work-related travel expenses.

56.     Amezcua Peregrina initially traveled to the United States to work for Defendant under a B-1 temporary business visa.

57.     On or about August 16, 2018, Defendant gave Amezcua Peregrina a template visa support letter to use in his petition for a TN visa.

58.    In Defendant's template visa support letter, Defendant represented that Amezcua Peregrina's "position is a degreed engineer in either electrical or mechanical systems." Defendant further represented that Amezcua Peregrina "works out for [Defendant's] Mexico City office since [A]ugust of 2018 and has a current employment contract" with Defendant and that Amezcua Peregrina "receives a salary of 20,000 MXN per month plus the benefits that correspond to him according to the Mexican legislation, which has allowed him to live a dignified life in his country."

59.    Mr. Radak signed Defendant's template visa support letter.

60.    Amezcua Peregrina held the Field Engineer job title and worked for Defendant at jobsites all over the United States in 2018.

61.    While Defendant led Amezcua Peregrina to believe his job duties as a Field Engineer would allow him autonomy and the ability to make professional engineering decisions, Defendant prevented him from using his engineering expertise or operating as a professional engineer. Defendant expressly told Amezcua Peregrina, only after he began working for Defendant, that he was not allowed to provide his professional opinion to corporate clients.

62.    In fact, Amezcua Peregrina's job duties amounted to those of an entry-level infrared inspection employee such as a Field Technician or Thermographer who did not possess an advanced engineering degree.

63.    Nor did Amezcua Peregrina's working hours and conditions align with Defendant's representations or his expectations for the job.

64.    The daily work Defendant assigned and expected Amezcua Peregrina to complete routinely took more than eight hours, oftentimes taking eleven or more hours per day. Amezcua

Peregrina worked many weekends and nights, and he spent long hours driving from jobsites to hotels and between jobsites by himself without pay.

65.     During some workweeks, Amezcua Peregrina worked over 40 hours for sub-minimum wages with no overtime pay. For example, during the week of May 6-12, 2018, he worked more than 49 hours and received approximately $4.76 per hour with no overtime pay.

66.     Further, Amezcua Peregrina faced poor working conditions on many of Defendant's jobsites, which made him uncomfortable and afraid for his personal safety. For example, Defendant regularly instructed Amezcua Peregrina to open high-voltage electrical panels located on jobsites without appropriate protective equipment. Amezcua Peregrina was exposed to potentially life-threatening electrical hazards on a routine basis.

67.     Despite the working conditions and wages, Amezcua Peregrina continued providing his services to Defendant because he knew he would be expected to pay Defendant $15,000 Mexican Pesos in the event that he quit or refused to work. Because Defendant was not reimbursing his travel expenses regularly, Amezcua Peregrina did not have the funds to pay Defendant, and he felt trapped in the position.

68.     After arriving at one particularly dangerous jobsite in 2018, Amezcua Peregrina felt uncomfortable working under the site's conditions. When he was unable to finish the job, Defendant asked him to return and finish the job, even when Amezcua Peregrina repeatedly informed Defendant that he was uncomfortable on the site. Defendant called Amezcua Peregrina and forced him to return to the site, telling him that he had to finish his inspection. If he felt uncomfortable with the site, then "it might not be the work for you," according to Mr. Radak,

implying that Amezcua Peregrina had no choice but to return to the site or face immediate termination.

69.     At that time, Amezcua Peregrina knew that he would have to pay the full $15,000 Mexican Pesos to Defendant in the event of his termination, despite the fact that he had spent the initial $15,000 Mexican Pesos on work-related travel in the United States. Rather than scrape together the money, Amezcua Peregrina put himself in danger by continuing to work for Defendant.

**Amezcua Peregrina's Unlawful Termination**

70.     In November 2018, Amezcua Peregrina was diagnosed with human immunodeficiency virus, or HIV. His doctor requested that he remain in Mexico for three months to complete the initial stages of his treatment.

71.     On December 21, 2018, Amezcua Peregrina sent an email to Mr. Radak and Ms. Sanchez with the subject line: "Special request due to health issue." In his email, Amezcua Peregrina disclosed that he had recently been diagnosed with HIV. He informed Defendant that his doctor asked him to remain in Mexico for three months during his initial round of medical treatment. Amezcua Peregrina requested that he work from home as Quality Control during the necessary treatment or, in the alternative, he requested to "see if there is a way I can work in the company without having to travel due to all of this information I shared."

72.     Instead of working with Amezcua Peregrina to come up with a reasonable accommodation for his medical needs, Defendant informed Amezcua Peregrina that it would be treating his situation as a resignation.

73.     When Amezcua Peregrina pushed back, Ms. Sanchez sent him a screenshot of an email she sent to Grupo EULEN stating that his last day of work would be January 31, 2019.

74.     Amezcua Peregrina's work with Defendant and subsequent termination resulted in stress, anxiety, and significant depression.

75.     On August 29, 2019, Amezcua Peregrina filed a charge of discrimination with the EEOC on behalf of himself and all others similarly situated, based on Defendant's discriminatory conduct.

## COLLECTIVE ACTION ALLEGATIONS

76.     Plaintiff Amezcua Peregrina and similarly situated guest workers reallege and incorporate by reference all allegations in all preceding paragraphs.

77.     Plaintiff brings Counts I and II of this action on behalf of himself and other similarly situated guest workers as authorized under the FLSA, 29 U.S.C. § 216(b). Plaintiff's Consent Form is attached as Exhibit A to this Complaint.

78.     The proposed FLSA Collective is defined as follows:

All non-U.S. citizen guest workers, who performed services for SEAM Group or Predictive Service at any time within three years prior to the filing of the Complaint (the "FLSA Collective").

79.     Members of the FLSA Collective are known to Defendant and are readily identifiable through Defendant's records.

80.     Plaintiff and the FLSA Collective are all victims of Defendant's widespread, repeated, systematic, and consistent illegal policies and practices that result in violations of the minimum wage and overtime provisions of the FLSA and significant damages to Plaintiff and the FLSA Collective.

81.     The FLSA Collective would benefit from the issuance of court-supervised notice of the lawsuit and the opportunity to join by filing their written consent with the Court.

82.     As this case proceeds, interested members of the FLSA Collective will likely file consent forms and join the case as opt-in plaintiffs.

## CLASS ACTION ALLEGATIONS

83.     Plaintiff Amezcua Peregrina and similarly situated guest workers reallege and incorporate by reference all allegations in all preceding paragraphs.

84.     Pursuant to Fed. R. Civ. P. 23(a) and 23(b), Plaintiff brings Counts III through VIII individually and on behalf of all similarly situated individuals.

85.     The proposed Rule 23 Class is defined as follows:

All non-U.S. citizen guest workers who performed services for SEAM Group or Predictive Service at any time within ten years prior to the filing of the Complaint (the "Rule 23 Class").

86.     Plaintiff and the proposed Rule 23 Class have been equally affected by Defendant's violations of law.

87.     The persons in the proposed Rule 23 Class are so numerous that joinder of all members is impracticable. While the precise number of class members has not been determined at this time, upon information and belief, at least fifty individuals provided services as guest workers for Defendant during the applicable statute of limitations period.

88.     There are questions of law and fact common to the proposed Rule 23 Class that predominate over questions solely affecting individual members.

89.     The common questions of law and fact include, but are not limited to:

a.      Whether Defendant engaged in a pattern and practice of treating guest workers differently than white and/or American workers on the basis of their race and/or national origin in terms and conditions of employment;

b.      Whether Defendant's policies and practices deprived guest workers of their equal opportunity to make and enforce contracts because of their race, ethnicity, and/or ancestry;

c.      Whether Defendant's policies and practices had a disparate impact on similarly-situated guest workers;

d.      Whether Defendant's uniform policies and practices of treating guest workers worse than white and/or American workers violates Title VII and/or Section 1981;

e.      Whether Defendant knowingly recruited guest workers for labor or services;

f.      Whether Defendant required guest workers to work long hours under unsafe conditions for less than minimum wage and with no overtime pay;

g.      Whether Defendant coerced guest workers into continued work on dangerous jobsites by delaying travel reimbursements and requiring repayment of $15,000 Mexican Pesos upon termination;

h.      Whether Defendant attempted to coerce guest workers into continued work on dangerous jobsites by delaying travel reimbursements and requiring repayment of $15,000 Mexican Pesos upon termination;

i.      Whether Defendant obtained guest workers' labor by means of serious harm or threats of serious harm;

j.      Whether Defendant attempted to obtain guest workers' labor by means of serious harm or threats of serious harm;

k.      Whether Defendant violated the TVPA;

l.      Whether Defendant knowingly benefited from participating in a venture which obtains trafficked labor, while knowing or in reckless disregard of the fact that the venture obtained labor through such means;

m.      Whether Defendant acted with malice and/or reckless indifference;

n.      Whether Defendant should be enjoined from engaging in future acts of unlawful race, ethnicity, ancestry, and/or national origin discrimination; and/or labor trafficking;

o.      Whether punitive damages relief for the proposed Rule 23 Class is warranted; and

p.      The proper measure and calculation of damages.

90.     The questions of law and fact listed above will yield common answers for Plaintiff and the proposed Rule 23 Class so as to determine whether Defendant is liable under Title VII, Section 1981, and the TVPA.

91.     Defendant's guest worker recruitment, hiring, compensation, and termination occurs as a pattern-and-practice throughout the company.

92.     Plaintiff's claims are typical of those members of the Rule 23 Class. Plaintiff, like other members of the proposed Rule 23 Class, was subject to Defendant's practices and policies described in this Complaint. Further, Plaintiff's job duties are typical of the Rule 23 Class, as all class members are or were guest workers.

93.     Plaintiff will fairly and adequately protect the interest of the proposed Rule 23 Class and has retained counsel experienced in complex class and collective action litigation.

94.     Class treatment is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

95.     This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law or fact predominate over any questions affecting individual class members. A class action is superior to other methods in order to ensure a fair and efficient adjudication of this controversy because, in the context of similar litigation, individual plaintiffs often lack the financial resources to vigorously prosecute separate lawsuits in federal court against large corporate defendants. Class litigation is also superior because it will preclude the need for

unduly duplicative litigation resulting in inconsistent judgments pertaining to Defendant's policies and practices. There do not appear to be any difficulties in managing this class action.

96.     In the alternative, class treatment is appropriate under Fed. R. Civ. P. 23(c)(4) because this is a case in which class adjudication of particular issues would serve the interests of the parties and the Court.

**COUNT I – VIOLATION OF THE FLSA**
**FAILURE TO PAY MINIMUM WAGE**
**29 U.S.C. § 201, *et seq.***
***On Behalf of Plaintiff and the Proposed FLSA Collective***

97.     Plaintiff Amezcua Peregrina and similarly situated guest workers reallege and incorporate by reference all allegations in all preceding paragraphs.

98.     The FLSA, 29 U.S.C. § 206, requires employers to pay employees not less than $7.25 an hour.

99.     Defendant is an FLSA "employer" pursuant to 29 U.S.C. § 203(d) and subject to the FLSA minimum wage and overtime provisions.

100.     Defendant is an "enterprise" as defined by the FLSA, 29 U.S.C. § 203(r)(1), and is engaged in commerce within the meaning of the FLSA, § 203(b), (s)(1).

101.     Plaintiff and the FLSA Collective are non-exempt covered employees under 29 U.S.C. § 203(e)(1).

102.     Defendant required Plaintiff and the FLSA Collective to routinely work for less than $7.25 an hour in violation of the minimum wage requirements of the FLSA. 29 U.S.C. § 206.

103.     Defendant did not make a good-faith effort to comply with the FLSA as it relates to Plaintiff and the FLSA Collective.

104.    Defendant knew or showed reckless disregard for the fact that it failed to pay these individuals minimum wage, constituting a willful violation of the FLSA. 29 U.S.C. § 255(a).

105.    Defendants' failure to comply with the FLSA minimum wage protections caused Plaintiff and the FLSA Collective to suffer loss of wages and interest thereon.

106.    Plaintiff and the FLSA Collective are entitled to minimum wage compensation, liquidated damages, and attorney's fees and costs under the FLSA. 29 U.S.C. § 216.

**COUNT II – VIOLATION OF THE FLSA
FAILURE TO PAY OVERTIME COMPENSATION
29 U.S.C. § 201,** *et seq.*
*On Behalf of Plaintiff and the Proposed FLSA Collective*

107.    Plaintiff Amezcua Peregrina and similarly situated guest workers reallege and incorporate by reference all allegations in all preceding paragraphs.

108.    The FLSA, 29 U.S.C. § 207, requires employers to pay non-exempt employees 1.5 times the regular rate of pay for all hours worked over forty (40) per workweek.

109.    Defendant is an FLSA "employer" pursuant to 29 U.S.C. § 203(d) and subject to the FLSA minimum wage and overtime provisions.

110.    Defendant is an "enterprise" as defined by the FLSA, 29 U.S.C. § 203(r)(1), and is engaged in commerce within the meaning of the FLSA, § 203(b), (s)(1).

111.    Plaintiff and the FLSA Collective are non-exempt covered employees under 29 U.S.C. § 203(e)(1).

112.    Defendant suffered and permitted Plaintiff and the FLSA Collective to routinely work more than forty (40) hours in a workweek without providing them with proper overtime compensation in violation of the overtime provisions of the FLSA. 29 U.S.C. § 207.

113. Defendant did not make a good-faith effort to comply with the FLSA as it relates to Plaintiff and the FLSA Collective.

114. Defendant knew or showed reckless disregard for the fact that it failed to pay these individuals overtime compensation, constituting a willful violation of the FLSA. 29 U.S.C. § 255(a).

115. Defendant's failure to comply with the FLSA overtime protections caused Amezcua Peregrina and the FLSA Collective to suffer loss of wages and interest thereon.

116. Amezcua Peregrina and the FLSA Collective are entitled to unpaid overtime, liquidated damages, and attorney's fees and costs under the FLSA. 29 U.S.C. § 216.

## COUNT III – VIOLATION OF TITLE VII
## UNLAWFUL RACE AND/OR NATIONAL ORIGIN DISCRIMINATION
### 42 U.S.C. § 2000e, *et seq.*
### *On Behalf of Plaintiff and the Proposed Rule 23 Class*

117. Plaintiff Amezcua Peregrina and similarly situated guest workers reallege and incorporate by reference all allegations in all preceding paragraphs.

118. Title VII provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . .or national origin" or to "limit, segregate, or classify [an employer's] employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect [the employee's] status as an employee, because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a).

119. Defendant is an employer and Plaintiff and the proposed Rule 23 Class qualified as its employees within the meaning of Title VII.

120. By the actions described above, Defendant discriminated against Plaintiff and the proposed Rule 23 Class in violation of Title VII by subjecting them to disparate treatment because of or on the basis of their race and/or national origin, in violation of 42 U.S.C. § 2000e-2.

121. Defendant's uniform guest worker policy, including its "geographic pay differentials" or "location pay differentials," has resulted in a pattern and/or practice of race and/or national origin discrimination against Plaintiff and the proposed Rule 23 Class with respect to the terms and conditions of their employment.

122. By the actions described above, Defendant has also engaged in conduct that has had a disparate impact on Plaintiff and the proposed Rule 23 Class with respect to the terms and conditions of their employment, particularly through its policy of compensating guest workers based on race and/or national origin.

123. Defendant has discriminated against Plaintiff and the proposed Rule 23 Class by treating them differently from and less favorably than similarly situated white and/or American employees. Defendant's guest worker policy has resulted in Defendant: (a) compensating Plaintiff and the proposed Rule 23 Class less than similarly situated white and/or American employees; (b) failing to compensate Plaintiff and the proposed Rule 23 Class for their overtime work and compensating them at sub-minimum wages; (c) making discriminatory job assignments that require Plaintiff and the proposed Rule 23 Class to endure poor working conditions; (d) making discriminatory job assignments that require Plaintiff and the proposed Rule 23 Class to work undesirable night and weekend hours; (e) forcing Plaintiff and the proposed Rule 23 Class to stay at hotels up to two hours away from their jobsites; and (f) requiring Plaintiff and the proposed Rule

23 Class to repay Defendant $15,000 Mexican Pesos upon termination in an effort to coerce them into continued work.

124.    Defendant committed the above-alleged facts with malice and/or reckless indifference to the rights and safety of Plaintiff and the proposed Rule 23 Class because Defendant recruited them specifically to exploit their labor at low cost.

125.    As a direct result of Defendant's violations of Title VII, Plaintiff and the proposed Rule 23 Class have suffered and will continue to suffer loss of past, present, and future income and benefits, loss of future employment opportunities and other economic damages, mental anguish, emotional distress, loss of reputation, and other non-economic damages.

126.    Plaintiff and the proposed Rule 23 Class are entitled to recover compensatory damages, punitive damages, and interest, as well as attorneys' fees and costs incurred in connection with this claim. 42 U.S.C. § 2000e-5(k); 42 U.S.C.A. § 1981a.

### COUNT IV – VIOLATION OF SECTION 1981
### UNLAWFUL RACE, ETHNICITY AND/OR ANCESTRY DISCRIMINATION
### 42 U.S.C. § 1981, *et seq.*
### *On Behalf of Plaintiff and the Proposed Rule 23 Class*

127.    Plaintiff Amezcua Peregrina and similarly situated guest workers reallege and incorporate by reference all allegations in all preceding paragraphs.

128.    Section 1981 provides that all persons in the United States "shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a).

129. Under Section 1981, the phrase "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

130. By the conduct described above, Defendant intentionally deprived Plaintiff and the proposed Rule 23 Class of the same rights as Defendant's white and/or American employees to the making, performance, modification, termination, and enjoyment of their contractual employment relationship with Defendant, in violation of Section 1981.

131. Defendant discriminated against Plaintiff and the proposed Rule 23 Class because of their race, ethnicity, and/or ancestry through its unlawful policies and practices that deprived them of an equal opportunity to make and enforce contracts. Defendant's guest worker policy has resulted in Defendant: (a) compensating Plaintiff and the proposed Rule 23 Class less than similarly situated white and/or American employees; (b) failing to compensate Plaintiff and the proposed Rule 23 Class for their overtime work and compensating them at sub-minimum wages; (c) making discriminatory job assignments that require Plaintiff and the proposed Rule 23 Class to endure poor working conditions; (d) making discriminatory job assignments that require Plaintiff and the proposed Rule 23 Class to work undesirable night and weekend hours; (e) forcing Plaintiff and the proposed Rule 23 Class to stay at hotels up to two hours away from their jobsites; and (f) requiring Plaintiff and the proposed Rule 23 Class to repay Defendant $15,000 Mexican Pesos upon termination in an effort to coerce them into continued work.

132. Defendant committed the foregoing acts with malice and/or reckless indifference to the federally protected rights of Plaintiff and the proposed Rule 23 Class. 42 U.S.C. § 1981a(b)(1). Defendant knew it was not paying guest workers minimum wage or overtime

compensation despite complying with federal requirements for its white and/or American employees. Defendant knew guest workers worked under unsafe conditions, and Defendant assigned guest workers to roles that required more extensive time and travel. In fact, Defendant recruited guest workers precisely because it could exploit their labor as non-white, non-Americans.

133.    As a result of Defendant's unlawful conduct, Plaintiff and the Rule 23 Class have been denied employment opportunities providing substantial compensation and benefits. Plaintiff and the Rule 23 Class have suffered and will continue to suffer injuries, including the loss of past, present, and future income and benefits; loss of future employment opportunities and other economic damages, mental anguish, emotional distress, loss of reputation, and other non-economic damages.

134.    Plaintiff and the proposed Rule 23 Class are entitled to recover compensatory damages, punitive damages, interest, as well as attorneys' fees and costs incurred in connection with this claim. 42 U.S.C. § 1981a(b); § 1988.

### COUNT V – VIOLATION OF THE TVPA
**18 U.S.C. § 1589(a)**
***On Behalf of Plaintiff and the Proposed Rule 23 Class***

135.    Plaintiff Amezcua Peregrina and similarly situated guest workers reallege and incorporate by reference all allegations in all preceding paragraphs.

136.    It is a violation of the TVPA to "knowingly provide[] or obtain[] the labor or services of a person . . . (2) by means of serious harm or threats of serious harm . . . ; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm . . . ." 18 U.S.C. § 1589(a).

24

137.   The TVPA defines "serious harm" to include nonphysical harm, "including psychological, financial, or reputational harm, that is sufficiently serious . . . to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589(c)(2).

138.   Defendant obtained labor from Plaintiff and the proposed Rule 23 Class through threats of serious harm and through a scheme to make Plaintiff and the proposed Rule 23 Class believe they would suffer serious harm.

139.   Defendant knowingly enticed Plaintiff and the proposed Rule 23 Class to enter the United States with false promises about the terms and benefits of their employment.

140.   Defendant knowingly abused American temporary and guest worker visa programs by drafting template visa support letters for highly qualified guest workers who would be filling entry-level jobs.

141.   Defendant knowingly required guest workers to work long hours under unsafe conditions for substandard wages.

142.   Defendant knowingly manipulated guest workers' travel receipt reimbursements to create financial pressure on the guest workers.

143.   Guest workers who feared for their safety could not simply walk off the job. Doing so would require them to repay $15,000 Mexican Pesos they did not possess and would cause them to lose their lawful status in this country.

144.   Defendant put guest workers in harm's way and knowingly devised a scheme to make workers believe they had no meaningful choice but to continue to work under these conditions in violation of the TVPA.

145.    Plaintiff and the proposed Rule 23 Class suffered damages as a result of Defendant's conduct.

146.    Plaintiff and the proposed Rule 23 Class are entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action. 18 U.S.C. § 1595(a).

**COUNT VI – VIOLATION OF THE TVPA**
**18 U.S.C. § 1589(b)**
***On Behalf of Plaintiff and the Proposed Rule 23 Class***

147.    Plaintiff Amezcua Peregrina and similarly situated guest workers reallege and incorporate by reference all allegations in all preceding paragraphs.

148.    It is a violation of the TVPA to "knowingly benefit" from participating in a venture which obtains labor through the means described in Count V, while "knowing or in reckless disregard of the fact" that the venture has obtained labor through such means. 18 U.S.C. § 1589(b).

149.    Defendant has knowingly benefited from participating in the forced labor venture described in Count V because guest workers allow Defendant to operate at considerably reduced cost and in dangerous environments.

150.    Defendant knew or recklessly disregarded the fact that the venture described in Count V engaged in obtaining forced labor.

151.    Plaintiff and the Rule 23 Class suffered damages as a result of Defendant's conduct.

152.    Plaintiff and the proposed Rule 23 Class are entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action. 18 U.S.C. § 1595(a).

## COUNT VII – VIOLATION OF THE TVPA
### 18 U.S.C. § 1590(a)
*On Behalf of Plaintiff and the Proposed Rule 23 Class*

153. Plaintiff Amezcua Peregrina and similarly situated guest workers reallege and incorporate by reference all allegations in all preceding paragraphs.

154. It is a violation of the TVPA to "knowingly recruit . . . any person for labor or services in violation of" the TVPA. 18 U.S.C. § 1590(a).

155. Defendant knowingly recruited Plaintiff and the proposed Rule 23 Class in violation of the TVPA.

156. Defendant employed a guest worker coordinator specifically to coordinate its recruitment of guest workers using labor brokers like Grupo EULEN.

157. Defendant knowingly lured Plaintiff and the proposed Rule 23 Class with promises of jobs suitable for professional engineers that Defendant knew did not exist.

158. Defendant knowingly hired Plaintiff and the proposed Rule 23 Class for considerably less than Defendant knew their work was worth.

159. Defendant knowingly forced Plaintiff and the proposed Rule 23 Class to continue working on dangerous jobsites by holding the $15,000 Mexican Pesos over their heads.

160. Plaintiff and the proposed Rule 23 Class suffered damages as a result of Defendant's conduct.

161. Plaintiff and the proposed Rule 23 Class are entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action. 18 U.S.C. § 1595(a).

## COUNT VIII – VIOLATION OF THE TVPA
### 18 U.S.C. § 1594(a)
#### *On Behalf of Plaintiff and the Proposed Rule 23 Class*

162.     Plaintiff Amezcua Peregrina and similarly situated guest workers reallege and incorporate by reference all allegations in all preceding paragraphs.

163.     Attempts to violate the TVPA are themselves violations of the TVPA. 18 U.S.C. § 1594(a).

164.     Defendant attempted to violate 18 U.S.C. §§ 1589 and 1590, as described herein.

165.     Plaintiff and the proposed Rule 23 Class suffered damages as a result of Defendant's conduct.

166.     Plaintiff and the proposed Rule 23 Class are entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action. 18 U.S.C. § 1595(a).

## COUNT IX – VIOLATION OF THE ADA
### 42 U.S.C. § 12101, *et seq.*
#### *On Behalf of Plaintiff*

167.     Plaintiff Amezcua Peregrina realleges and incorporates by reference all allegations in all preceding paragraphs.

168.     The ADA makes it unlawful for employers to "discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

169.     The ADA also requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee. 42 U.S.C. § 12112(b)(5).

170. For the purposes of the ADA, a person has a disability under the law if they suffer from a "physical or mental impairment that substantially limits one or more major life activities," have a record of such an impairment, or are "regarded as having such an impairment." 42 U.S.C. § 12102(1).

171. During relevant time periods, Plaintiff was an employee who suffered from and/or was regarded as having a disability within the meaning of the ADA. 42 U.S.C. § 12102.

172. During all relevant time periods, Plaintiff could perform the "essential functions" of his job "with or without reasonable accommodation" for his disability and/or perceived disability, and thus, was "qualified" for his position with Defendant. 42 U.S.C. § 12111(8).

173. Defendant violated the ADA by refusing Plaintiff's request for a reasonable accommodation and by terminating Plaintiff on the basis of his disability and/or perceived disability. 42 U.S.C. § 12112(a).

174. In violating the ADA, Defendant acted willfully and with malice and/or reckless indifference to his federally-protected rights.

175. As a result of Defendant's conduct, Plaintiff suffered and will continue to suffer significant injuries and losses.

176. Plaintiff seeks compensatory and punitive damages, interest, and reasonable attorneys' fees and costs. 42 U.S.C. § 12205; 42 U.S.C. § 1981a.

## PRAYER FOR RELIEF

177. **WHEREFORE**, Plaintiff Amezcua Peregrina, on behalf of himself and the proposed FLSA Collective, prays for relief as follows:

A.   Designation of this action as a collective action under § 216(b) of the FLSA and permission to notify all putative FLSA Collective members, apprising them of the pendency of this action and permitting them to assert timely FLSA claims in this action by filing individual consents to join pursuant to § 216(b);

B.   Judgment that the practices complained of herein are unlawful under the minimum wage and overtime provisions of the FLSA, 29 U.S.C. § 201, *et seq.*;

C.   Judgement that Defendant's actions were willful;

D.   An award of damages in the amount of Plaintiff's and the FLSA Collective members' unpaid minimum and overtime wages;

E.   An award of liquidated damages;

F.   Costs and expenses of this action incurred herein, including reasonable attorneys' fees and expert fees;

G.   Pre-Judgment and Post-Judgment interest, as provided by law; and

H.   Any and all such other and further legal and equitable relief as this Court deems necessary, just, and proper.

178.   **WHEREFORE**, Plaintiff Amezcua Peregrina as class representative, on behalf of himself and the proposed Rule 23 Class, prays for relief as follows:

A.   Certification of a class action pursuant to Fed. R. Civ. P. 23 on behalf of the proposed Rule 23 Class;

B.   The appointment of Plaintiff as class representative and his counsel as class counsel;

C.      Judgment that the practices complained of herein resulted in disparate treatment of Plaintiff and the proposed Rule 23 Class in violation of Title VII;

D.      Judgment that the practices complained of herein resulted in disaprate impact of Plaintiff and the proposed Rule 23 Class in violation of Title VII;

E.      Judgment against Defendant for violation of the Section 1981;

F.      Judgment against Defendant for violation of § 1589(a) of the TVPA;

G.      Judgment against Defendant for violation of § 1589(b) of the TVPA;

H.      Judgment against Defendant for violation of § 1590(a) of the TVPA;

I.      Judgment against Defendant for violation of § 1594(a) of the TVPA;

J.      Judgment finding that Defendant's violations of Title VII, Section 1981, and the TVPA were knowing and committed with malice and/or reckless indifference;

K.      An award of damages, including compensatory and punitive damages;

L.      An award of any pre- and post-judgment interest;

M.      An award of reasonable attorneys' fees and costs; and

N.      Such further relief as may be appropriate.

179.    **WHEREFORE**, Plaintiff Amezcua Peregrina, on behalf of himself, prays for relief as follows:

A.  Judgment against Defendant for refusing Plaintiff's request for a reasonable accommodation, in violation of the ADA;

B.  Judgment against Defendant for terminating Plaintiff on the basis of his disability and/or perceived disability, in violation of the ADA;

C.  Judgment finding that Defendant's violations of the ADA were willful and committed with malice and/or reckless indifference;

D.  An award of damages arising from loss of past and future income, and other damages;

E.  An award of damages for mental anguish and emotional distress;

F.  An award of punitive damages;

G.  An award of reasonable attorneys' fees, disbursements, and costs;

H.  Pre-judgment and post-judgment interest, as provided by law;

I.  For such other and further relief available by statute;

J.  For such other and further relief as the Court deems just and equitable.

### DEMAND FOR JURY TRIAL

180. Plaintiff Amezcua Peregrina demands a trial by jury on all issues so triable.

Respectfully Submitted:

Dated: May 8, 2020

By _____

*Rebekah L. Bailey, MN Bar No. 0389599
bailey@nka.com
**Robert L. Schug, MN Bar No. 0387013
schug@nka.com
**Anna P. Prakash, MN Bar No. 0351362
aprakash@nka.com

**Nicole J. Schladt, MN Bar No. 0400234
nschladt@nka.com
**NICHOLS KASTER, PLLP**
4600 IDS Center, 80 S. 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 256-3200
Fax: (612) 338-4878

*Motion Pro Hac Vice Pending*
**Motion Pro Hac Vice Forthcoming*

ATTORNEYS FOR PLAINTIFF AND THE
PUTATIVE CLASS AND COLLECTIVE